Dr. Rocco URELLA, M.D., Appellant,

v.

**KENTUCKY BOARD OF MEDICAL LICENSURE, Appellee.**

No. 95–SC–798–DG.

Supreme Court of Kentucky.

Feb. 27, 1997.

J. Fox DeMoisey, DeMoisey & Smither, Louisville, for appellant.

C. Lloyd Vest, II, Kentucky Board of Medical Licensure, Louisville, for appellee.

JOHNSTONE, Justice.

Rocco P. Urella, M.D., appeals the revocation of his license to practice medicine in the Commonwealth of Kentucky. The Court of Appeals reversed the Jefferson Circuit Court, which had entered judgment reversing the decision of the Kentucky Board of Medical Licensure ("Board") to revoke Urella's license. For the reasons set out below, we affirm the Court of Appeals.

Urella began his medical career in the late 1970's in the state of New York. He was also licensed in Pennsylvania and Indiana before moving to Kentucky in 1989. In Urella's initial application for a Kentucky medical license, he indicated that he was not under investigation by any licensure authority. To maintain a medical license in Kentucky, all physicians are required to complete an "annual renewal" form with the Board. One of the propounded questions is whether there are outstanding disciplinary proceedings, or current investigations, in any other state. Urella responded in the negative on both his 1991 and 1992 renewal forms.

However, in filing his 1993 annual renewal form, Urella answered yes to the following question:

SINCE YOU LAST REGISTERED YOUR KENTUCKY LICENSE:

1. Have you been disciplined or denied; have you made an act of surrender or resignation; or are you currently under investigation in regard to any of the following:

a. medical or osteopathic licensure in any state or Canadian province;

_x_ Yes ___No

In fact, Urella had surrendered his New York medical license on October 1, 1992, as the result of events surrounding the 1985 death of a nurse with whom Urella had a personal relationship. Apparently, after a New York Police Department investigation, no criminal charges were brought. Moreover, Pennsylvania authorities took no disciplinary action against Urella's license in Pennsylvania, where he was practicing, after a letter and interview in 1986 concerning the incident.

However, on October 18, 1991, the Office of Professional Medical Conduct for the New York Department of Health interviewed Urella concerning the 1985 events. Urella did not acknowledge this contact in his 1992 Kentucky annual renewal form, according to his testimony before the Board, due to his understanding that he would be notified by New York authorities within thirty (30) days of October 18, 1991, if disciplinary action was to be taken.

On August 10, 1992, the New York Department of Health issued a Statement of Charges against Urella's New York medical license. Two days later, Urella applied for permission to surrender his license on the grounds that he agreed "not to contest the specifications of professional misconduct set forth in the charges."

When Urella noted that he had surrendered his New York license on his 1993 application for renewal in Kentucky, the Board issued a Show Cause Order/Complaint on August 19, 1993. Urella appeared for an administrative due process hearing, with counsel, on November 4, 1993. The Administrative Law Judge ("ALJ") rendered Findings of Fact and Conclusions of Law on March 1, 1994, concluding that sufficient grounds existed for the Board to take disciplinary action. After considering exceptions to the ALJ's report and oral arguments, the Board adopted the ALJ's Findings of Fact and Conclusions of Law and rendered an order revoking Urella's Kentucky medical license.

The Jefferson Circuit Court found no basis for revocation of Urella's license and reversed the Board. Thereafter, a unanimous panel of the Court of Appeals reversed the decision of the circuit court, finding substantial evidence in the record to support the Board's findings and conclusions. We granted discretionary review.

■ Urella advances two primary arguments in his appeal. First, he claims that the Board erred in concluding that surrender of his New York license amounted to "other disciplinary action" under KRS 311.595(16),[1] as charged in the Show Cause Order/Complaint of August 19, 1993. The statute provided as follows:

**311.595. Denial, probation, suspension, or revocation of licenses and permits.**

If the power has not been transferred by statute to some other board, commission, or agency of this state, the board may deny an application or reregistration for a license; place a licensee on probation for a period not to exceed five (5) years; suspend a license for a period not to exceed five (5) years; limit or restrict a license for an indefinite period; or revoke any license heretofore or hereafter issued by the board, upon proof that the licensee has:

(16) Had his license to practice medicine or osteopathy in any other state, territory, or foreign nation revoked, suspended, restricted, or limited or has been *subjected to other disciplinary action* by the licensing authority thereof. (Emphasis added).

The Board issued the Show Cause Order, pursuant to KRS 311.572, based upon documents from the New York State Board for Professional Medical Conduct. Those documents included the New York Statement of Charges dated August 10, 1992, containing seventeen (17) separate specifications; the Application to Surrender License signed by Urella on August 12, 1992; Urella's Statement Concerning Voluntary Surrender of New York License signed August 17, 1992; and an Order accepting the surrender of license dated October 1, 1992. The parties jointly introduced these documents at the hearing before the ALJ on November 4, 1993.

Urella's application to surrender his license stated, "I agree not to contest the specifications of professional misconduct set forth in the charges." His separate, unsworn, statement noted that he agreed to a voluntary surrender due to his relocation to Louisville, the inconvenience of traveling to New York for hearings, the costs of litigation, and the accompanying trauma to his family and the deceased's family that a hearing would produce. While he noted that he "would have difficulty disproving some of the charges," he also stated, "I want to make clear that in doing so I am not admitting fault in any manner.... I am making no admission of wrongdoing."

The parties expend considerable effort arguing whether the act of surrendering a medical license alone equates to "other disciplinary action" as referred to in KRS

---

1. This statute was amended effective July 15, 1994. KRS 311.595(16) is now KRS 311.595(17). The new subsection also added the following language: "This shall not require relitigation of the disciplinary action."

311.595(16). The Board argues that Urella did not deny the truth of the charges, but merely refused to admit fault or wrongdoing. Urella argues that not all voluntary surrenders of licensure are disciplinary acts.

However, we believe applicable New York law to be dispositive of this issue. Disciplinary actions against medical licenses in New York are governed by N.Y. Public Health Law § 230(10) (McKinney 1990). Under New York's procedure, charges are filed after the director of the Office of Professional Medical Conduct and a majority of a committee determine a hearing is warranted. The matter then proceeds to a hearing and final decision and order, or the matter may be resolved by an informal resolution of the charges.

The N.Y. State Administrative Procedure Act § 301(5) (McKinney 1990) provides:

§ 301. **Hearings**

5. Unless precluded by statute, disposition may be made of any adjudicatory proceeding by stipulation, agreed settlement, consent order, default, or other informal method.

§ 307(1) provides:

§ 307. **Decisions, determinations and orders**

1. A final decision, determination or order adverse to a party in an adjudicatory proceeding shall be in writing or stated in the record and shall include findings of fact and conclusions of law *or* reasons for the decision, determination or order. (Emphasis added).

Consequently, findings of fact and conclusions of law are unnecessary in a case where the order includes the "reasons for the decision, determination or order."

Dispositive of the issue is N.Y. Administrative Rules & Regulations, Uniform Hearing Procedures § 51.10 (McKinney 1990), which provides as follows:

§ 51.10 **Stipulations and consent orders.**

(c) In matters governed by Public Health Law, sections 230, 230–a, 230–b and 230–c, a *licensee, who is under investigation or against whom a determination has been made that a hearing is warranted,* as

a condition for the satisfaction of all charges and potential charges, shall admit guilt to at least one of the acts of misconduct alleged, *or shall agree not to contest the allegations,* or shall assert that he or she cannot successfully defend against at least one of the acts of misconduct alleged, and shall either *surrender his or her license* or agree to a penalty. The signators to such an agreement shall be the licensee, his or her counsel, if the licensee is represented, the attorney for the department, the director of the Office of Professional Medical Conduct and the chairperson of the State Board for Professional Medical Conduct. The chairperson of the State Board for Professional Medical Conduct shall issue *a surrender or consent order based upon said agreement. The order shall have the same force and effect as an order issued after a hearing.* (Emphasis added).

These provisions clearly evidence that Urella's voluntary license surrender upon the condition that he agree not to contest the charges of misconduct had the same force and effect as if an order had been issued after a hearing. Thus, the Board correctly found that Urella's voluntary surrender of his New York license constituted "other disciplinary action" by a state licensing authority. This basis alone supports the revocation of Urella's license.

■ Urella next argues that the Board exceeded its authority by alleging a violation of KRS 311.590(1), which prohibits falsification or forgery of statements and documents prepared for a licensure authority. The second charge in the Board's Show Cause Order/Complaint was that Urella "failed to disclose the New York investigation on January 9, 1992, when he completed his annual renewal form." The Board cited its authority for this charge to be KRS 311.590(1). A violation of this provision subjects an offender to conviction for a Class D felony. KRS 311.990(5). The Board readily concedes that it has no authority to convict a licensee of a criminal offense, and that the better course would have been a charge pursuant to KRS 311.595(1), a strikingly similar statute which

provides that the Board may take disciplinary action against any licensee who has:

(1) Knowingly made or presented, or caused to be made or presented, any false, fraudulent, or forged statement, writing, certificate, diploma, or other thing, in connection with an application for a license or permit[.]

■ Having reviewed the record, we agree with the Board that this argument is not preserved for review. It was not presented to the ALJ, nor to the Board until ten (10) days after oral arguments. Neither was the issue addressed by the trial court or Court of Appeals. It is well settled that failure to raise an issue before an administrative body precludes the assertion of that issue in an action for judicial review, or as an initial matter on discretionary review to this Court. *Jackson v. State Auto. Mutual Insurance Company*, Ky., 837 S.W.2d 496, 498 (1992); *Personnel Board v. Heck*, Ky.App., 725 S.W.2d 13, 17 (1987).

Nor would the result be different had the issue been properly preserved. Urella was clearly apprised of the nature of the charges against him. He has not shown or alleged any prejudice by the incorrect citation of KRS 311.590(1), rather than KRS 311.595(1).

■ Moreover, Urella bore the burden of proof at the show cause hearing before the Board to show that no disciplinary action should be taken against his license. KRS 311.572(2). He was intimately familiar with the events surrounding the tragic death of his friend, Cathy. While he did not specifically admit wrongdoing in his statement filed with the New York authorities, he did admit during the Kentucky administrative hearing that the prescriptions in question were passed with his signature stamp; that he left his prescription pads and signature stamp with Cathy at her apartment in New York while he practiced in Pennsylvania; that he knew she had a drug problem; and that, among the several charges alleging inappropriate prescriptions, two of the patients

named as receiving prescriptions for controlled substances were friends of Cathy.

In addition, Urella did not challenge the New York allegations that, while he was in her apartment, Cathy suffered a fatal drug overdose; that he failed to call for emergency medical assistance for approximately three (3) hours; and that he fought with the rescue team upon arrival and had to be forcibly removed.

Urella also testified that New York authorities contacted him in the fall of 1991 for an interview concerning Cathy's death and a list of inappropriately prescribed controlled substances under his signature stamp. He appeared, with counsel, for an interview. His counsel, who stayed in contact with New York authorities, advised him in mid-July of 1992 that the best course was to surrender his license. Urella stated that he did not believe that the New York actions amounted to an investigation as he had been told he would be contacted within thirty (30) days of the October interview.

■ We have long held that where an administrative agency's findings of fact are supported by substantial evidence, those findings are binding on the reviewing court. *Kosmos Cement Company, Inc. v. Haney*, Ky., 698 S.W.2d 819, 820 (1985); *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298 (1972). This is true even though there may be conflicting evidence in the record. *Kentucky Commission on Human Rights v. Fraser*, Ky., 625 S.W.2d 852 (1981). Although fact finders may have reached differing conclusions in this case, there is clearly substantial evidence in the record to support the Board's finding that Urella knowingly made a false statement in view of the jointly introduced documents and Urella's own testimony. The Board did not abuse its discretion.

Finally, Urella attacks the standard of review to be employed. While submitting to the trial court and Court of Appeals that KRS 311.555 [2] and the often cited "substan-

---

**2.** This statute provides that the court shall disturb actions of the Board only in the event that the action of the Board:

(1) Constitutes a clear abuse of its discretion;

(2) Is clearly beyond its legislative delegated authority; or

(3) Violated the procedure for disciplinary action as described in KRS 311.591.

tial evidence" test of *Fuller, supra,* encompass the appropriate standard of review, Urella ultimately challenges whether the *Fuller* test is compatible with Section 2 of the Kentucky Constitution. Unfortunately, Urella did not present this theory to the Board or trial court. Urella cannot pursue one theory below and another on appellate review. *Port v. Commonwealth,* Ky., 906 S.W.2d 327, 333 (1995). Moreover, we are not inclined to modify the standard set forth in *Fuller* and its progeny despite Urella's interesting analysis of the issue.

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

All concur.