RENDERED: FEBRUARY 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0674-MR

CHARLES R. NOPLIS, II, M.D.                                        APPELLANT

|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
| v. | HONORABLE A.C. MCKAY CHAUVIN, JUDGE |
|  | ACTION NO. 19-CI-002565 |

KENTUCKY BOARD OF MEDICAL
LICENSURE                                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

COMBS, JUDGE: Charles R. Noplis, II, M.D., appeals from an opinion and order

of the Jefferson Circuit Court that affirmed a final order of the Kentucky Board of

Medical Licensure ("the Board") imposing disciplinary sanctions against Dr.

Noplis. After our review, we affirm.

Dr. Noplis has been licensed to practice in Kentucky since 2011. He

specializes in psychiatry and addiction medicine. At the time these proceedings

were commenced, Dr. Noplis was a partner at Louisville Behavioral Health Systems, PLLC, and practiced at Renew Recovery, a Suboxone clinic in southern Jefferson County.

In March 2016, the Board was notified by Becky Schroering, Assistant County Attorney for Jefferson County, that Dr. Noplis had a criminal charge of misdemeanor assault pending in Jefferson District Court. The Board's review of Dr. Noplis's 2016 license renewal application showed that he answered "no" to the question: "Since you last registered, to your knowledge, have you become the subject of any criminal investigation or are any criminal charges pending against you?" Noplis had been arraigned **six months before** he submitted this renewal application. The Board opened an investigation.

The Board obtained taped interviews of the female assault victim and another witness. These interviews were conducted by the Louisville Metro Police Department as part of the criminal investigation. During the interview, the assault victim indicated that she and a friend were in the ladies' room at Gerstle's Place in Louisville when a man entered. He was later identified as Dr. Noplis. According to the victim, Noplis appeared intoxicated, and when she told him to leave, he struck her in the head. Outside the bar, the victim observed Dr. Noplis getting into a truck. She called police and was about to report his license plate number when Dr. Noplis approached her from behind and struck her in the head, again knocking

-2-

her to the ground.  The victim was treated for her injuries at Jewish Hospital.  She underwent a CT scan and was diagnosed with concussive syndrome.  Her bruised and bloody knee was x-rayed.

Dr. Noplis responded to the Board's investigation through correspondence from his attorney.  Dr. Noplis admitted that he had a pending criminal charge for assault and explained that the false information provided in his renewal application was simply an oversight.  He offered to pay a fine.

The Board obtained copies of the record of the Jefferson District Court showing that Dr. Noplis eventually entered a plea pursuant to the requirements of *Alford v. North Carolina*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 62 (1970),[1] to the assault charge.  He was ordered to pay restitution for the victim's hospital expenses not covered by insurance and to undergo a substance abuse assessment.

While the Board continued to investigate the criminal matter, it received a written grievance filed by a patient of Dr. Noplis, Patient A.  In the grievance, Patient A explained that Dr. Noplis struck him in the face after a heated exchange during a regularly scheduled appointment.  Patient A reported that he

---

[1] A person entering *Alford* plea as part of a plea bargain does not admit guilt but acknowledges the existence of evidence that would have the potential of resulting in a finding of guilt.

suffered a black eye as a result of the assault. He attached several photographs of his face taken after the encounter.

After reviewing the results of the separate investigations, the Board's inquiry panel issued an administrative complaint in September 2016. The complaint charged Dr. Noplis with violating the provisions of KRS[2] 311.595(9), which subjects a physician to discipline where he "[e]ngaged in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public or any member thereof" and with KRS 311.595(1), which subjects a physician to discipline where he knowingly made a false statement in connection with an application for a license. An administrative hearing was scheduled for December 6 and 7, 2016.

Dr. Noplis filed a timely answer and denied the material allegations of the complaint. He argued that the tribunal lacked jurisdiction to conduct the administrative proceedings because there were no grounds for the contention that his conduct was a matter for discipline. Additionally, he anticipated that the Board would not afford him due process.

In October 2016, Dr. Noplis filed a motion to dismiss that part of the administrative complaint dealing with his assault of the female victim at the bar. He acknowledged the result of the criminal proceedings against him but argued

---

[2] Kentucky Revised Statutes.

-4-

that the allegation that his conduct violated the provisions of KRS 311.595(9) could not be proven because the victim was not his patient and his conduct did not involve his medical practice. He contended that the only relevant provision, KRS 311.595(4), authorized discipline where a physician had been convicted of a felony or a crime involving moral turpitude. He argued that fourth-degree assault did not constitute moral turpitude. The Board contended that there was no provision for dismissal of the administrative complaint before a hearing was conducted.

In December 2016, the hearing officer issued an order deferring a ruling on the motion to dismiss in favor of a full evidentiary hearing. He explained as follows:

> By proceeding in that manner, the hearing officer, the Board, and any reviewing court will have before them a full factual record regarding Dr. Noplis'[s] conduct, and they will be able to make a more informed decision on whether his conduct falls within the scope of dishonorable, unethical, and unprofessional conduct that is subject to sanction under the Board's statutes.

An administrative hearing was conducted over the course of two days in January 2017. Called as witnesses were: Assistant County Attorney Becky Schroering; the female assault victim; Patient A; two employees from Dr. Noplis's office; and the Board's investigator. Dr. Noplis testified on his own behalf. He called no additional witnesses.

-5-

In March 2017, the hearing officer issued his findings of fact, conclusions of law, and recommended order. He found that the female assault victim "provided a consistent and believable narrative of the events that transpired" at the bar. He noted that the victim was not intoxicated that evening and that she appeared to be completely "candid and truthful in her testimony about her actions and the conduct of Dr. Noplis." The hearing officer found that the encounter that the victim described was consistent with Dr. Noplis's "being intoxicated, upset at being thrown out of the bar, and frustrated that he could not locate his date." He determined that the descriptions of the incident included in Dr. Noplis's testimony "simply aren't believable" and rejected Dr. Noplis's suggestion that the victim pursued the criminal action against him for financial gain. The hearing officer accepted the victim's testimony that she "simply sought justice for being assaulted and has never contacted an attorney or the media about the incident." Additionally, the hearing officer found that Dr. Noplis knowingly submitted a false answer to the question concerning his criminal record in his license renewal application.

The hearing officer also found Patient A to be a credible witness. He rejected Dr. Noplis's assertion that Patient A choked him and his contention that the patient's black eye "may have been caused by Dr. Noplis's thumb making contact with the eye while defending himself." He also rejected Dr. Noplis's

explanation that the doctor's extensive training in Jujitsu prevented him from responding to a patient in the manner described by Patient A. He found specifically that Patient A's testimony was consistent with the recollections of Dr. Noplis's employee, who, when she heard the disturbance, asked Dr. Noplis whether she should call the police. Patient A explained that he (Patient A) immediately called out, "Yes, call the police. He's hitting me." The hearing officer found that Patient A reported the incident because he was concerned that Dr. Noplis would hurt other patients. He noted that Dr. Noplis acknowledged during the hearing that it is unethical for a physician to strike a patient.

The hearing officer concluded that these facts showed that Dr. Noplis violated both the provisions of KRS 311.595(1) and KRS 311.595(9). He observed that the phrase "dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public or any member thereof" as used in the provisions of KRS 311.595(9) is defined by statute to include but not be limited to the following acts by a licensee:

> Conduct which is calculated or has the effect of bringing the medical profession into disrepute, including but not limited to . . . any departure from, or failure to conform to the principles of medical ethics of the American Medical Association . . . .

KRS 311.597(4). The hearing officer concluded that Dr. Noplis failed to conform to the American Medical Association's (AMA) principles of medical ethics when

he assaulted the female victim and Patient A. He concluded that this conduct brought the medical profession into disrepute; showed disrespect for the law; and failed to uphold the standards of professionalism set for physicians. The hearing officer recommended that the Board impose an appropriate sanction for the misconduct. Dr. Noplis filed written exceptions.

The Board's hearing panel reviewed the substance of the administrative complaint; the hearing officer's findings of fact, conclusions of law, and recommended order; Dr. Noplis's exceptions; and a memorandum from the Board's counsel. The hearing panel also considered a then recent opinion of this Court, *Strauss v. Kentucky Board of Medical Licensure*, 2015-CA-000700-MR, 2017 WL 2209952 (Ky. App. May 12, 2017).

In *Strauss*, we held, in part, that a hearing officer was required by statute to make a <u>specific</u> penalty recommendation. As a result of our holding in that case, the Board's hearing panel remanded the matter to the hearing officer

> to hold the case in abeyance until discretionary review of [the *Strauss* decision] is either denied or completed before the Kentucky Supreme Court, and then to conduct any further proceedings, if deemed necessary, consistent with a final and binding [C]ourt decision in *Strauss*.

Upon its review, the Supreme Court of Kentucky held that "a hearing officer's recommended order must recommend a disposition of the administrative matter, but it **need not** recommend a penalty." *Kentucky Bd. of*

-8-

*Medical Licensure v. Strauss*, 558 S.W.3d 443, 453 (Ky. 2018) (emphasis added). On November 1, 2018, the Court denied Dr. Strauss's petition for rehearing.

The Board filed a motion to remove the Noplis matter from abeyance. Dr. Noplis objected and filed a motion to have the matter remain with the hearing officer for consideration of additional evidence. In January 2019, the hearing officer granted the motion of the Board and submitted the case again to the Board's hearing panel without considering the additional evidence proffered by Dr. Noplis.

The Board's hearing panel reviewed the administrative proceedings again. It accepted the hearing officer's findings of fact and conclusions of law and incorporated them into its final order. Pursuant to the terms of the order, Dr. Noplis was required to complete an assessment at the Vanderbilt Comprehensive Assessment Program for Professionals and to reimburse the Board for the costs of the proceeding in the amount of $9,659.40. In its order dated March 25, 2019, Dr. Noplis's license to practice medicine was placed on probation for five years.

Pursuant to the provisions of KRS 311.593, Dr. Noplis appealed to the Jefferson Circuit Court. The parties submitted briefs, and oral argument was scheduled for September 10, 2019. A notice of submission followed.

Next, in the trial court's record is a copy of an agreed order between Dr. Noplis and the Board's inquiry panel dated December 9, 2019. In its stipulations of fact, that agreed order reflects that Dr. Noplis's medical license was

subject to the order of probation filed on March 25, 2019. It also reflects the parties' stipulation that Dr. Noplis was charged on December 10, 2018, in Dearborn County, Indiana, with one count of felony domestic battery (moderate bodily injury) and one count of misdemeanor battery (involving bodily waste) against his spouse. This was just weeks before the hearing officer granted the Board's motion to have the matter removed from abeyance following the Court's decision in *Kentucky Board of Medical Licensure v. Strauss*, 558 S.W.3d at 453, and submitted the case to the hearing panel for a final order. The order recounts that Dr. Noplis pleaded guilty to misdemeanor battery resulting in bodily injury in April 2019 -- just days after entry of the initial order of probation, the subject of this appeal. The charge of battery by bodily waste was dismissed.

Next, the agreed order refers to a report prepared by the Vanderbilt Comprehensive Assessment Program following a fitness-for-duty evaluation. The report reflected the evaluator's "concerns about [Dr. Noplis's] level of control over his anger and hostility" and recounted that Dr. Noplis "continues to state he does not shy away from conflict, is afraid of his own strength, and often does not recognize the need to de-escalate situations." The evaluator concluded that "these issues need to be addressed immediately . . . ."

In stipulated conclusions of law, the agreed order recites that Dr. Noplis has engaged in conduct which violates the provisions of KRS 311.595(4);

-10-

that provision was amended to authorize discipline where a physician was convicted of a crime to include both felonies and misdemeanors. The parties acknowledged that there were legal grounds for them to enter into the agreed order without benefit of an evidentiary hearing.

The parties agreed that Dr. Noplis's medical license would be placed on probation for a period of five years. He agreed to complete a course for distressed physicians at Vanderbilt University's Center for Professional Health; to continue therapy with a psychotherapist; to abstain from the consumption of mood-altering substances, including alcohol, except where prescribed for a documented legitimate medical purpose; to submit to random breathalyzer, blood, and urine alcohol and/or drug analysis initiated by the Board; and not to violate any provisions of KRS 311.595 or KRS 311.597.

Dr. Noplis agreed that his violation of any term of the agreed order would constitute an immediate danger to the public health, safety, or welfare and that the panel would be authorized to enter an emergency order of suspension following an *ex parte* presentation of the facts by the Board's counsel. He acknowledged that any violation of the order would also provide a legal basis for revocation of his medical license.

On February 4, 2021, a notice to dismiss the circuit court proceedings for lack of prosecution was entered. Dr. Noplis responded and opposed the dismissal. He indicated that he wished "to be benefitted by the [c]ourt's ruling."

In an order entered on May 17, 2021, the Jefferson Circuit Court affirmed the order of the Board's hearing panel. The court concluded that there was substantial evidence in the record to support the finding that Dr. Noplis had engaged in conduct that harmed a member of the public (the female assault victim) and his patient (Patient A) and that the hearing panel had correctly applied the law to the facts. The court rejected Dr. Noplis's contention that the hearing panel failed to follow the requirements of KRS Chapter 13B concerning the conduct of administrative hearings generally. This appeal followed.

Through enactment of the Kentucky Medical and Osteopathic Practice Act of 1972, KRS 311.530-311.620 (the Medical Practice Act), the General Assembly created a comprehensive statutory scheme for the regulation of the practice of medicine in the Commonwealth. The Kentucky Board of Medical Licensure was created

> to function as an independent board, the majority of whose members are licensed physicians, with the intent that such a peer group is best qualified to regulate, control and otherwise discipline the licensees who practice medicine . . . within the Commonwealth of Kentucky.

KRS 311.555.

-12-

Judicial review of the Board's decisions is narrowly circumscribed. KRS 311.593. Our courts may intrude upon an action of the Board only where: the action constitutes a clear abuse of discretion; its action is clearly beyond its delegated authority; or where it violated the procedure for disciplinary action as described in the provisions of KRS 311.591. *Id.* Where the Board's "findings of fact are supported by substantial evidence, those findings are binding on the reviewing court. This is true even though there may be conflicting evidence in the record." *Urella v. Kentucky Bd. of Medical Licensure*, 939 S.W.2d 869, 873 (Ky. 1997) (citations omitted). In contrast, we review issues of law *de novo. Abul-Ela v. Kentucky Bd. of Medical Licensure*, 217 S.W.3d 246, 250 (Ky. App. 2006); *Aubrey v. Office of Attorney General*, 994 S.W.2d 516, 519 (Ky. App. 1998).

On appeal, Dr. Noplis argues that the Board exceeded its statutory authority by basing its disciplinary action, in part, upon conduct that is beyond the purview of the Board. He also contends that the Board's administrative procedures fail to afford due process to physicians. He argues that the trial court's opinion and order must be vacated and that the matter be remanded to the hearing panel for proper adjudication -- including a dismissal of the complaint to the extent that it relates to his assault of the female victim. We disagree with these assertions. In addition, the parties' agreed order appears to supersede -- in all respects -- the order from which Dr. Noplis now appeals. Consequently, we would be inclined to

dismiss the appeal except for that part of the order requiring Dr. Noplis to pay for the costs of the proceedings against him. It is upon that basis alone that we undertake review of the order of the Jefferson Circuit Court.

With respect to his assault of the female victim, Dr. Noplis contends that the Board had jurisdiction to discipline him only under the provisions of KRS 311.595(4). In 2016, when the administrative complaint was filed against Dr. Noplis, KRS 311.595(4) authorized the Board to discipline a physician upon proof that he had been convicted of a felony or any crime involving moral turpitude. A conviction for fourth-degree assault was not proof that he had been convicted of a felony or a crime of moral turpitude; therefore, Dr. Noplis argues that the Board "illegally manufactured a cause of action pursuant to KRS 311.595(9)" and pursued "a new 'avenue' to achieve its disciplinary desires." He contends that substituting the provisions of KRS 311.595(9) authorizing discipline where a physician's conduct runs afoul of AMA ethics rules has "the effect of modifying and substantially eviscerating the import of KRS 311.595(4)." Finally, Dr. Noplis argues that he was never on notice that his conduct -- "a misdemeanor 'not involving moral turpitude'" -- could provide the basis for discipline. We disagree.

We are not persuaded that the charge of fourth-degree assault does not constitute a crime of moral turpitude under the circumstances described by the female victim in this case. However, the Board conceded before the administrative

hearing officer that the misdemeanor offense was not "morally turpitudinous" and, therefore, not subject to discipline under the provisions of KRS 311.595(4). Nevertheless, we agree with the conclusions of both the Board and the circuit court that Dr. Noplis's behavior with respect to the female victim in the ladies' room and in the bar parking lot clearly constituted "dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public or any member thereof" and that it could be lawfully addressed through the provisions of KRS 311.595(9). The Board's decision to charge Dr. Noplis under this provision did not "modify or substantially eviscerate" the provisions of KRS 311.595(4), and Dr. Noplis was aware -- or certainly should have been -- that his violent behavior would potentially result in consequences to his medical license.

Next, Dr. Noplis takes issue with the hearing officer's refusal to reopen the administrative hearing to allow for the presentation of additional evidence. Dr. Noplis proposed to submit evidence indicating that he had been the subject of professional recognition and awards; evidence aimed at impeaching Patient A on a collateral matter; and evidence of the Board's resolution of a disciplinary matter involving another physician. However, there is no provision in either KRS Chapter 13B or the Medical Practice Act authorizing or requiring a hearing officer to reopen an administrative hearing once the matter stands submitted. The hearing officer did not err by denying Dr. Noplis's motion to

reopen the proceedings. Furthermore, with respect to the proposed additional evidence (professional awards; the basis of his collateral attack on Patient A's credibility; and the facts of the proceedings against another physician), we conclude that none of the additional evidence was relevant to the issues to be determined by the hearing officer and the Board's hearing panel.

Finally, Dr. Noplis complains generally that the Board engages in a "persistent and systemic denial of actual due process." Dr. Noplis makes no factual allegation of misconduct in these proceedings. Instead, he makes broad, vague, and conclusory assertions of wrongdoing. For example, he claims that the due process afforded physicians is merely illusory because the Board's hearing officer always "denigrates or evades the evidence submitted by the concerned physician" and "always rules in favor of the Board." He submits that the Board never announces the penalty that it is seeking and never puts into evidence its argument or proof to support the discipline. He contends that physicians are deprived of the opportunity to confront evidence; to offer evidence in mitigation of the Board's evidence; and to articulate an argument in opposition to the Board.

Dr. Noplis cites nothing in the proceedings to support his contention that there is no evidence in the administrative record to support the penalty imposed against him. On the contrary, the evidence is considerable, and it is more than sufficient to support the discipline imposed. Nor does he demonstrate how

the hearing officer was incentivized by the administrative process to find Dr. Noplis's testimony incredible. Moreover, where a physician has concerns regarding the impartiality of a hearing officer, he has recourse to a remedy, KRS 13B.040(2)(a), which provides that:

> [a]ny party may request the disqualification of a hearing officer, agency head, or member of the agency head by filing an affidavit, upon discovery of facts establishing grounds for a disqualification, stating the particular grounds upon which he claims that a fair and impartial hearing cannot be accorded.

There is no indication in the record before us that Dr. Noplis took any steps to disqualify the hearing officer prior to the hearing due to perceived bias or any other reason. Dr. Noplis does not allege any facts -- or point to anything at all in the record -- to indicate that the hearing officer "denigrated" or "evaded" the evidence he submitted or that he "was denied the opportunity to present evidence in mitigation or to confront the evidence against him."

Dr. Noplis was advised of the possible disciplinary measures that could be imposed against him by express reference to the provisions of KRS 311.595 in the complaint. He was notified again of the possible penalties at the administrative hearing. There is no requirement in the provisions of KRS 13B.090, KRS 311.591, or KRS 311.595 that the Board designate the specific penalty sought. Nor is there anything in the record to support Dr. Noplis's bare assertion that "it is clear that the administrative record was not reviewed in any substantive

-17-

part" by the hearing panel.  Consequently, we decline to address those allegations further.

Finally, Dr. Noplis objects to a policy which fails to grant him an opportunity to address the hearing panel directly and which permits the hearing panel to request legal advice without input of a physician's counsel.  There is no requirement under the provisions of KRS 13B.120 nor the Medical Practice Act that a physician be granted a separate hearing in front of the hearing panel before final action is taken.  Instead, written exceptions are the mechanism by which physicians' objections to the hearing officer's recommended order may be heard by the hearing panel.  The hearing panel is permitted access to legal counsel by the specific provisions of KRS 311.565(1)(e).  The attorney advising the hearing panel during its deliberations is never the attorney who prosecuted the matter before it.  Both the attorney who prosecuted the case and the physician's counsel are excluded from deliberations.  Counsel for Dr. Noplis simply has no right to participate in the hearing panel's deliberations.

Although Dr. Noplis disagrees with the Board's conclusions, he fails to demonstrate that they were unsupported by substantial evidence; that the Board abused its discretion by imposing its disciplinary sanction; or that it acted outside its statutory authority.  We have found no basis to disturb the circuit court's order.

Accordingly, we affirm the order of the Jefferson Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:        BRIEF FOR APPELLEE:

J. Fox DeMoisey        Sara Farmer
Louisville, Kentucky        Louisville, Kentucky