RENDERED: JUNE 15, 2017
TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2015-SC-000581-DG DATE 7/6/17 Kim Redmon, DC

.GARRARD COUNTY, KENTUCKY; JOHN           APPELLANTS
WILSON; JOE LEAVELL; DOAN ADKINSON;
RONNIE LANE; FRED SIMPSON; AND·
BETTY HOLTZCLAW

             ON REVIEW FROM THE COURT OF APPEALS
V.                NO. 2014-CA-000187-MR
            GARRARD CIRCUIT COURT NO. 12-CI-00132

KEVIN MIDDLETON                APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**AFFIRMING**

Garrard County is one of those Kentucky counties that has an elected county jailer but does not operate a county jail. The Garrard Fiscal Court voted before the jailer's election to fix the amount of the jailer's salary for the new term at an amount lower than that set for the incumbent jailer. After the election, the newly elected jailer sued the fiscal court, alleging that it was statutorily powerless to reduce his pay. The trial court ruled that the fiscal court had the authority to increase or reduce the amount of the jailer's salary before the commencement of the jailer's new term in office. Thus, the trial court ruled that the Garrard Fiscal Court had acted properly in reducing the jailer's

pay before the commencement of his term. But the Court of Appeals reversed the trial court, holding instead that the General Assembly has specifically enacted a statute that prohibits fiscal courts in counties without jails from reducing the pay of their elected jailer. On discretionary review, we are constrained to agree with the holding of the Court of Appeals. Thus, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The Kentucky Constitution mandates that every county elect a jailer,[1] but it does not require every county to operate a jail. The General Assembly extends to county fiscal courts the discretion to set the county jailer's salary within certain parameters established in the overall statutory framework.

Garrard County is one of the Kentucky counties that does not operate a jail. In 2006, Kenny Tuggle was re-elected for his third term as Garrard County Jailer. During his tenure, his salary gradually increased over the years he spent in office. Tuggle resigned his post in 2008. At that time he was earning $30,547.97 per year. The county found someone to fill the two remaining years on Tuggle's unexpired term. Kevin Middleton approached the county judge-executive expressing his interest in the vacant position. Eventually, Middleton agreed to fill the time remaining on Tuggle's term as jailer in exchange for $20,000 per year.

Before the 2010 election, the Garrard County Fiscal Court fixed the salary for the county jailer for the ensuing term to be $20,300.02 per year. After completing Tuggle's term, Middleton ran for jailer and was elected and

[1] Ky. Const. § 99.

2

continued to serve as the Garrard County Jailer. In 2012, Middleton filed suit in circuit court contending that: (1) he was entitled to the difference between the salary he had been paid for fulfilling the expired term and the salary Tuggle received during his tenure as jailer; and (2) as a matter of law, the Garrard County Fiscal Court was statutorily barred from lowering the county jailer's salary before the 2010 election to an amount less than the $30,547.97 that Tuggle received. Related to his suit, Middleton also requested an award of attorney's fees.

The trial court granted partial summary judgment to both parties. First, the circuit court ruled that Garrard County was obligated to pay Middleton $30,547.97 while he completed Tuggle's term. But second, the trial court ruled that the fiscal court was statutorily authorized to reduce the jailer's salary before the commencement of a new term, so Middleton had no continuing entitlement to a minimum salary of at least $30,547.97. And finally, the trial court denied Middleton's request for attorney's fees.

Both parties appealed to the Kentucky Court of Appeals. The appellate panel affirmed the circuit court's ruling that the fiscal court could not reduce the county jailer's salary during the course of an elected term and held that Middleton was entitled to the difference between his pay and Tuggle's. The panel also rejected Middleton's request for attorney's fees. But the Court of Appeals reversed the ruling allowing the fiscal court to reduce the jailer's salary between terms. Relying on *Wallace v. King*[2], the panel held that the plain

---

[2] 973 S.W.2d 475 (Ky. App. 1998).

3

language of KRS 441.243(3) prohibits the county jailer who does not operate a full-service jail to receive a salary lower than he received the prior year.

We granted Garrard County's motion for discretionary review to determine whether KRS 441.245 applies only to mid-term salary alterations or whether it broadly limits a fiscal court's ability to set jailer salaries in a general sense. Because we agree with the Court of Appeals that the plain language of KRS 441.243(3) dictates this admittedly odd, yet not absurd, result, we affirm the ruling below.

## II. ANALYSIS.

Of the three issues brought before the Court of Appeals, it appears only two of those remain for our consideration on discretionary review. Based on Garrard County's petition for discretionary review, it appears that the county is not challenging both lower-court rulings awarding Middleton backpay based on the mid-term salary adjustment he received for completing Tuggle's term. So we will not undertake analysis of this issue. We address only Garrard County's discretion to establish the jailer's salary in between terms and Middleton's claims for attorney's fees, an issue he re-asserts in his brief.

### A. Standard of Review.

This case comes before us for review of the trial court's grant of partial summary judgment in favor of both parties. While factual findings shall not be set aside unless clearly erroneous, conclusions of law are reviewed de novo.[3] Here the material facts culminating in the present litigation are undisputed. So

---

[3] *Baze v. Rees*, 217 S.W.3d 207, 210 (Ky. 2006).

4

this case truly involves only questions of law. As such, we review the decisions below totally under the de novo standard of review.

**B. The Plain Meaning of KRS 441.243(3) is Not Ambiguous.**

First, and most importantly, Garrard County appeals the Court of Appeals' ruling that the text of KRS 441.243(3) prevents the fiscal court from decreasing the county jailer's salary in between elected terms of service. While Middleton maintains that this provision speaks generally to the county's overall ability to set jailer salaries, Garrard County points to the statute's overt reference to KRS 64.527—Kentucky's codification of the "rubber dollar" doctrine—in support of its point that this salary statute only limits how the fiscal court may operate in the course of a jailer's current term of service. That statute does not, according to the county, impact the fiscal court's power to set the salary as it deems appropriate for future terms. Though KRS 441.245 is the only statute directly referencing the overall salaries for jailers who do not operate full-service jails, the Kentucky Constitution and supporting statutes delineate a clear structure and provide a fixed set of rules for the various possibilities facing fiscal courts.

Somewhat uniquely, county jailers are specifically referenced in the Kentucky Constitution. Section 99 mandates that every county have an elected jailer irrespective of whether that county maintains a full-service jail. The constitution also goes to some lengths to specify basic terms and conditions surrounding the compensation of these officers. Section 161 specifies:

> The compensation of any city, county, town or municipal officer shall not be changed after his election or appointment, or during

5

his term of office; nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed.

Section 235 reiterates this point for all public officers and reserves the power to regulate and deduct salaries for neglect of official duties to the province of the General Assembly. So the Kentucky Constitution serves two critical functions relevant to today's dispute: every county must have a jailer and the jailer's salary may not be changed during the jailer's term of office.

As for actually setting the salary the county jailer is to receive, the General Assembly vests that power in the county fiscal court. Indeed, fiscal courts are responsible for the allocation of public funds for an efficient local government, entrusted with the power and duty to "regulate and control the fiscal affairs of the county."[4] More specifically, the General Assembly mandates that fiscal courts "provide for the incarceration of prisoners according to the provisions of Chapter 44" that includes carrying out government functions "necessary for the operation of the county."[5] In *Casey County Fiscal Court v. Burke*, we held that limitations on a fiscal court's flexibility to finance various government services "cannot be implied and must be an express restriction."[6] Garrard County reminds us that this is an extension of the Home Rule principle, which intentionally permits local governments "latitude and flexibility" to conduct their own affairs. *See* KRS 441.025(2)(c). So the county

---

[4] KRS 67.080(1)(c).

[5] KRS 67.083(3)(e).

[6] 743 S.W.2d 26, 27 (Ky. 1988).

correctly identifies that we cannot limit the fiscal court's ability to alter salaries for future elected officials unless that limitation is clearly expressed by statute. And absent any statute or constitutional minimums or maximums to the contrary, the fiscal court remains free to set local official salaries according to its discretion.

KRS 441.245 is one such example of the General Assembly instructing fiscal courts in reaching its own financial decisions, laying out basic parameters for fiscal courts in establishing the salary for county jailer. And by exercising its dormant authority over local government, the statute also serves as an inherent limitation to the fiscal court's discretion in budgeting and establishing municipal government. As it happens, this is also the only statute directly speaking to general compensation for county jailers servicing a county without a full-time jail.

The relevant portions of KRS 441.245 revolve around its first three sections. They provide that:

(1) The jailer who operates a full-service jail shall receive a monthly salary pursuant to any salary schedule in KRS Chapter 64 applicable to jailers operating a full service jail from the county jail operating budget.
(2) No jailer holding office in the Commonwealth on or after January 6, 1999, shall receive an annual salary of less than twenty thousand dollars ($20,000).
(3) The salaries of jailers who are not subject to any salary schedule in KRS Chapter 64 may be set at a higher level if their salary does not exceed the constitutional salary limit applicable to jailers. *These jailers' salaries shall at least equal the prior year's level* and may be adjusted by the fiscal court for

7

> the change in the prior year's consumer price index according
> to the provisions of KRS 64.527.[7]

There is no dispute that KRS 441.245 limits discretion in setting jailer salaries; the question at the heart of today's case is the magnitude and breadth of the instruction the General Assembly imposes on county government. In matters of statutory interpretation, the first rule is that the text of the statute is supreme.[8] This is an analysis dependent upon the context of the statute as a whole, with the chosen language presumed to be understood according to its ordinary public meaning.[9] And of most significance, our focus on the statutory text prohibits us from construing a meaning that the words simply will not bear.[10] Employing our rules of interpretation, we see KRS 441.245 as a clear and methodical statute outlining all jailer salaries as set by the fiscal court.

The first two sections of KRS 441.245 are simple enough; there does not appear to be any dispute to their meanings. Section one unambiguously applies to county jailers who operate full-service jails. Their pay schedules are cross-referenced with Chapter 64, and the General Assembly merely instructs fiscal courts to follow those guidelines when establishing jailer salaries. And these guidelines allow for the possibility that a fiscal court may reduce the

---

[7] (emphasis added). We recognize that KRS 441.245 was amended during the 2017 legislative session to include additional information relating to jailers falling under the classification in section (3). These amended provisions do not impact the resolution of Middleton's claim, nor do they alter in any way the statutory texts underlying this dispute.

[8] *See Owen v. University of Kentucky*, 486 S.W.3d 266, 270 (Ky. 2016)("...the words of the text are of paramount concern, and what they convey, in their context, is what the text means.").

[9] *Id.*

[10] *Id.*

8

jailer's salary for the next term of office. Section two applies to all county jailers, irrespective of whether they operate full-service jails or not. And this section informs the fiscal court that their salaries may not be less than $20,000 per year. Notice that none of these provisions appears to limit only mid-term salaries; there is no such limiting language. They appear to lay down abstract, generally applicable compensation rules. The context of the statute overall, to this point, does not bear a construction that softens its instructions to fiscal courts to only temporal adjustments. So to accept Garrard County's argument, we must see this limitation in the clear meaning of section three itself, in spite of context. To do this would force us to incorporate words and meanings into this text that simply are not there.

Like the first two sections, KRS 441.245(3) is crystal clear as to *whom* it applies, if in a roundabout way. This provision applies to jailers not subject to the salary schedule detailed in Chapter 64. Among this class of excluded jailers are those, like Middleton, that do not service a county jail. The first clause is also unmistakably clear. This authorizes the fiscal court to set the salary for jailers like Middleton at a higher level, up to the constitutional maximum. Read in unison with section two, the fiscal court is statutorily bound to compensate Middleton at a salary between $20,000 and the limit established in the constitution. Then comes the elephant in the room.

The next sentence informs fiscal courts that these jail-less jailers are to receive a salary that is "at least equal" to the prior year's, which may be adjusted in accordance with the consumer price index. Garrard County focuses

9

on this adjusting power as an implied limitation to the breadth of the General Assembly's statement on the salary issue. KRS 64.527, or the "rubber dollar" statute, is an exception to the mid-term-salary-adjustment prohibition in the Kentucky Constitution. As a general matter, this statute allows mid-term annual adjustments based on the value of the dollar and the relative changes in purchasing power from year to year. Because of the reference to KRS 64.527, the county argues that for purposes of generally construing KRS 441.245(3), "the prior year" means "the prior year so long as that prior year was within the current term of office and not within a preceding term of office."

The Court of Appeals panel rejected this interpretation because it deemed adopting this view required adding qualifiers to the established statutory text. In reaching this conclusion, the panel embraced the holding in *Wallace v. King*, a Court of Appeals ruling that Garrard County seriously questions as applicable given statutory alterations to KRS 441.245 in the nearly two decades since the case was decided. In *Wallace*, the Court of Appeals rejected an argument almost identical to the one Garrard County advances today, except that in that instance a county eliminated its jail during the course of a jailer's term.[11] The county, in response, attempted to decrease the jailer's salary.[12] In rejecting the county's argument, the panel found "neither equivocation nor ambiguity in the language dictating that whatever sum was the jailer's salary in 1983 should continue thereafter—with the only change permitted consisting of

---

[11] 973 S.W.2d 485.

[12] *Id.*

10

an upward escalation to allow for inflation in reference to the consumer price index."[13]

At the time *Wallace* was decided, KRS 441.245 did indeed look quite different. The pre-1998 version of this law was as follows:

(1) The jailer shall receive a monthly salary from the county jail operating budget.

(2) In recognition of the increased duties and responsibilities of the office of jailer, jailers holding office on July 1, 1982, shall be entitled to a level of compensation in calendar year 1982 which shall be equal to the compensation of jailer in calendar year 1981 as adjusted for the change in the consumer price index during calendar year 1981 or $12,000, whichever is greater. The fiscal court may establish a higher level of compensation for the jailer, provided, however, that in no event shall the jailer's compensation exceed the maximum compensation allowable for county officials under KRS 64.527. In the event that a jail was closed during calendar year 1981, the secretary of finance may, upon proper documentation by the jailer, direct that a prior calendar year's level of compensation be used as a basis for setting the jailer's compensation pursuant to this section.

(3) The jailer's monthly salary for the period July, 1982, through December, 1982, shall be the jailer's compensation for calendar year 1982 as provided in subsection (2) of this section less the jailer's earnings for January through June, 1982, divided by six (6).

(4) Except as provided in subsection five (5) of this section, *the jailer's compensation for 1983 and subsequent years shall equal the prior year's compensation and may be adjusted by the fiscal court for the change in the prior year's consumer price index.*

(5) Effective January 6, 1986, the salary for jailers in any county where there is no jail and the jailer does not transport prisoners shall be twelve thousand dollars ($12,000) per year.

This statute has undoubtedly undergone a major makeover since *Wallace* was decided. Most notable to this case, this version of KRS 441.245 set a fixed salary to classes of jailers like—Middleton—that do not operate jails. But it

---

[13] *Id.* at 487.

11

cannot go unnoticed that the *Wallace* court focused its attention to the meaning of subsection (4)—language essentially identical to that now contained in KRS 441.245(3). We agree that it is not exactly the same and should not be treated as such, but we also reject any notions that the rationale behind the Court of Appeals' ruling in *Wallace* is irrelevant to our review today simply because other aspects of the statute have been altered over the last twenty years.

Of course, *Wallace* binds this Court in no way whatsoever, and we need not rely on any of its heavy lifting. But in reaching our own conclusion, we must agree with the Court of Appeals' ruling in this case. To interpret this statute according to Garrard County's argument, we would have to insert qualifying language that simply is not there and unimplied from the context of the statute as a whole. The only power the fiscal court wields in setting salaries for jailers of this type from term to term is the ability to increase his salary up to the constitutional limit. This is made perfectly clear by the legislature's choice to affirm that the jailer's salary shall at least equal the prior year's level.

We do agree that the clause relating to the "rubber dollar" doctrine does in fact speak to mid-term alterations. This is evident from use of the word *adjust* paired with an object, which in this context refers to the fiscal court's ability to "bring to a more satisfactory state," or to "make correspondent or conformable."[14] Putting two and two together, this clause simply allows the fiscal court to take Middleton's salary as defined by law in the preceding

---

[14] Webster's Third New International Dictionary (1993).

12

provisions and slightly alter it in accordance with the cost of living. So it most clearly is a mid-term adjustment, but unrelated to his base salary—the rules of which are clearly detailed in the remainder of KRS 441.245(3).

In many ways, this statutory scheme might appear to have an ironic twist: the law allows jailers that actually service county jails to be subject to term-to-term salary changes and reductions, but insulates jail-less jailers from salary decreases in perpetuity. While this is a head-scratching result, and potentially one the General Assembly did not intend to create, we cannot say it is absurd. And we see no cause to contort the words of the statute to avoid the truth about KRS 441.245(3)—the words mean what they say.

## C. Middleton is Not Entitled Attorney's Fees.

Middleton also re-asserts his supposed entitlement to attorney's fees. Garrard County contends that he did not adequately preserve this issue for appeal to this Court. Because his argument appeared for the first time in his brief, we agree with Garrard County and will not consider Middleton's attorney-fee argument. So we affirm the Court of Appeals on that issue.

## III. CONCLUSION.

For the foregoing reasons, we affirm the ruling of the Court of Appeals. All sitting. All concur.

13

COUNSEL FOR APPELLANTS:

John L. Gay
Litany Loren Webster
Walther, Gay & Mack, PLC


COUNSEL FOR APPELLEE:

Gerry L. Calvert II
Calvert Law Group, LLC

James Paul Long Jr.