OPINION OF THE COURT BY JUSTICE HUGHES
*445 The Kentucky Board of Medical Licensure (Board) is charged with regulating the practice of medicine in the Commonwealth, including administering the physician disciplinary process. Upon issuance of a complaint against a physician, a hearing officer is appointed to conduct an evidentiary hearing and issue a recommended order with findings of fact, conclusions of law and a proposed disposition. A hearing panel of the Board then considers the matter and determines either to dismiss the complaint or to issue a final order regarding the violation(s) and any appropriate penalty. This administrative process is controlled by relevant provisions of Kentucky Revised Statutes (KRS) Chapter 311 regarding the practice of medicine and KRS Chapter 13B regarding the conduct of administrative hearings generally.
On review of a final order issued against Appellee Jon M. Strauss, M.D., the Court of Appeals concluded that the hearing officer erred by not recommending a specific penalty, and that the Board's hearing panel also erred by not independently reviewing the entire evidentiary record before rendering a final order. Having reviewed the relevant statutes, we conclude that the Court of Appeals misconstrued the statutes with respect to both issues and, accordingly, we reverse and remand.
RELEVANT FACTS
Jon M. Strauss, M.D. (Strauss) is a family medicine practitioner who, at times relevant to this matter, maintained offices in Berea, Richmond and Mt. Vernon, Kentucky. Disciplinary action against him began in 2010 with a grievance regarding sexual contact with, and ensuing threats against, Patient A. Three other grievances were subsequently filed, one of which also involved sexual contact with another patient identified as Patient U. The matter resulted in an eleven-day hearing involving 130 documents and 60 exhibits and ultimately the issuance of a five-year probation order with conditions. We begin with a brief overview of the grievances and the ensuing disciplinary process to give context to the two discrete statutory issues raised by the appeal.
Patient A filed the first grievance with the Board alleging Strauss had sexual contact with her while she was a patient, including an unsuccessful attempt to have intercourse, and that he threatened her with "trouble" and a mental institution if she left his care. After investigation, a Board inquiry panel filed a formal complaint against Strauss. The second grievance was raised by a father who complained of the medications Strauss was prescribing for his daughter, Patient B, a drug addict. When the investigation revealed significant concerns about Strauss's patterns of prescribing involving Patient B and eight other patients and he declined remedial education and temporary monitoring, the inquiry panel filed an Amended Complaint. While preparing for the matter, the Board learned that Strauss had treated and prescribed medications for his wife and other family members, resulting in a Second Amended Complaint. The third grievance, from a former co-worker, alleged that Strauss subjected patients to unnecessary office visits and hospitalizations and overused psychological diagnoses. Following review by a Board consultant, which raised concerns, this resulted *446 in the Third Amended Complaint. Finally, the administrator of the St. Joseph Berea Hospital filed a grievance alleging Strauss had engaged in sexual relations with three patients while they were hospitalized (one was Patient A, one was deceased and the third was identified as Patient U). Patient U confirmed the sexual contact, her complaints to hospital nurses, sexual intercourse in both Strauss's office and the hospital, overmedication given to her prior to sexual acts and threats by Strauss that intimidated her when she tried to leave his practice. This last grievance resulted in the final Fourth Amended Complaint.
The aforementioned complaints were issued by Inquiry Panel B of the Board. The Board, created pursuant to KRS 311.530, consists of the deans from the University of Kentucky and University of Louisville medical schools, the dean of the Pikeville College of Osteopathy, the Commissioner of Public Health and eleven members appointed by the Governor, including seven licensed medical doctors and one licensed osteopathic physician, as well as three citizens. The Board divides into two inquiry/hearing panels for consideration of discipline, with one panel investigating and deciding whether a complaint should issue and the other panel then adjudicating any complaint and imposing discipline where appropriate. The panels alternate these responsibilities. In this case, Inquiry Panel B issued the Complaints against Strauss and then Hearing Panel A was charged with acting on those Complaints. The hearing panel is authorized to appoint a hearing officer, KRS 311.565(1)(g) and KRS 311.591(5), and it did so in Strauss's case.
The hearing officer heard testimony and admitted exhibits over eleven days in 2009-2010 and issued a detailed 47-page document entitled "Findings of Fact, Conclusions of Law, and Recommended Order" (Recommended Order). After detailing the evidence supporting his factual findings, the hearing officer concluded that the Board had met its burden to prove violations of KRS Chapter 311 by a preponderance of the evidence. KRS 13B.090(7). The seven violations were: (1-2) sexual contact with Patients A and U in violation of KRS 311.595(5) ; (3-4) "dishonorable, unethical or unprofessional conduct" in his treatment of Patients A and U in violation of KRS 311.597(4) ; (5) inappropriate prescription of controlled substances to Patient U in exchange for sexual contact with her in violation of KRS 311.595(9) as illustrated by KRS 311.597(4) ; (6) inaccurate, misleading and internally inconsistent medical records in violation of KRS 311.595(9) ; and (7) failure to provide the Board with complete medical records involving Patient U and attempts to obstruct the investigation in violation of KRS 311.595(12) and KRS 311.590(2). The hearing officer thus found statutory violations as alleged in the Fourth Amended Complaint[1] and recommended the Board "take any appropriate action against [Strauss's] license for those violations." This Recommended Order was issued August 18, 2010.
Hearing Panel A took up the matter at its September 2010 meeting, after reviewing the Recommended Order and written exceptions and hearing from counsel for both the Board and Strauss. It adopted the findings and conclusions of the hearing officer and imposed a five-year probation period that allowed Strauss to continue practicing medicine with conditions. He was not allowed to see female patients without supervision, he was required to attend two specific professional courses regarding *447 "proper boundaries" with patients and medical records documentation, and he was to be evaluated by the Kentucky Physicians Health Foundation to determine if there was any condition that could adversely affect his ability to practice medicine. Strauss was also required to pay a $5,000 fine and costs of $31,802.07.
In November 2010 Strauss petitioned Jefferson Circuit Court for review, seeking not only a reversal of the Board's order but also naming the fifteen individual Board members and seeking declaratory, injunctive and monetary relief pursuant to 42 U.S.C. § 1983. Intensive motion practice followed and in September 2012 the circuit court denied Strauss's various motions to stay, dismissed the declaratory, injunctive and monetary relief claims, and dismissed the individual Board members from the suit. Strauss's brief on the merits was filed in April 2014 and one year later the circuit court, having dealt with additional motion practice including Strauss's attempted introduction of sixteen affidavits, affirmed the Board's final order.
The circuit court found that the Board's order was supported by substantial evidence and that the hearing officer and the Board had both proceeded correctly under the applicable statutes. The circuit court concluded the hearing officer did not err because he had recommended a penalty, i.e., that the Board take "appropriate action" against Strauss's license. In any event, KRS 13B. 110(1) does not require the recommendation of a specific penalty; "a written recommended order ... shall include his findings of fact, conclusion of law, and recommended disposition of the hearing, including recommended penalties, if any. " (Emphasis supplied). The circuit court also found the Board did not err by not independently reviewing the entire hearing record and exhibits, noting that KRS 13B. 120(1) requires an agency to consider "the record including the recommended order and any exceptions duly filed to a recommended order." Other portions of KRS Chapter 13B reference "the official record of hearing" or the "entire record" but the KRS 13B.120 language is more limited, and requiring the Board conduct a new, independent review of the entire record would render parts of the statutory scheme "practically superfluous" and the matter "impractically expensive."
Strauss appealed to the Court of Appeals in May 2015, where he limited his appellate issues to the two we have noted-the hearing officer's "failure" to recommend a penalty and the Board's "failure" to review the entire hearing proceedings and exhibits before issuing a final order. The three-judge appellate panel reversed. As to the hearing officer recommending a penalty, the Court of Appeals found the statute ambiguous and resorted to a transcript of a 1996 legislative committee meeting (provided by Strauss's counsel) to determine the hearing officer's responsibilities. On the matter of the scope of the Board's (hearing panel's) review, the appellate court relied on an earlier opinion of that court which addressed the identical issue, Moses v. Kentucky Bd. of Med. Licensure, 2014-CA-000783, 2016 WL 551431 (Ky. App. Feb. 12, 2016).[2] The Court of Appeals cited Moses in concluding the Board was required to review independently the full record before the hearing officer, but Moses actually reached the opposite *448 conclusion, i.e., that the statutory directive to consider the record, the hearing officer's recommendation and the exceptions did not mandate a full-fledged review of the record in its entirety. Having decided the issues in the manner stated, the Court of Appeals declined to address whether there was substantial evidence supporting the Board's order but remanded the case to the circuit court for that court to remand to the hearing officer to make a specific penalty recommendation and then for the Board to enter a final order after reviewing the entire administrative record.
We granted discretionary review, recognizing that the issues presented are of importance not only in physician disciplinary matters but in other administrative proceedings conducted pursuant to KRS Chapter 13B.
ANALYSIS
The issues before us distill to matters of statutory construction, more specifically whether the hearing officer and later the Board, acting through Hearing Panel A, fulfilled their statutory responsibilities. While we give deference to factfinders by employing a clearly erroneous standard, our review of purely legal issues-including the meaning of Kentucky statutes-is always de novo. Garrard Cty. v. Middleton, 520 S.W.3d 746, 748 (Ky. 2017). The "cardinal rule of statutory construction" is to ascertain and give effect to the General Assembly's intent. MPM Fin. Grp., Inc. v. Morton, 289 S.W.3d 193, 197 (Ky. 2009). In discerning legislative intent, "the first rule is that the text of the statute is supreme." Garrard Cty., 520 S.W.3d at 750 (citing Owen v. Univ. of Kentucky, 486 S.W.3d 266, 270 (Ky. 2016) ). Generally, we presume that the legislature intended the statute "to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes." Shawnee Telecom Res., Inc. v. Brown, 354 S.W.3d 542 (Ky. 2011). Before turning to the operative statutory language in this case, we address the intersection of the specific physician disciplinary statutes in KRS Chapter 311 with the more general provisions of KRS Chapter 13B.
I. The Physician Disciplinary Process is Controlled by KRS Chapter 311 and Chapter 13B.
KRS Chapter 13B, adopted in 1994 and effective in July 1996, set forth for the first time in Kentucky administrative history a framework for the conduct of administrative hearings generally throughout the Executive Branch. The Chapter addresses inter alia the power of agencies with respect to hearing officers ( KRS 13B.030 ), the qualifications of hearing officers ( KRS 13B.040 ), the conduct of hearings (KRS13B.080), the contents of a hearing officer's recommended order (KRS 13B. 110), the issuance of the agency's final order ( KRS 13B.120 ) and judicial review ( KRS 13B.140 ) and appeal ( KRS 13B.160 ). Unless otherwise exempted, agencies in the Executive Branch, which include cabinets, boards, departments and other entities, are required to follow Chapter 13B when conducting administrative hearings. KRS 13B.020(1) ; KRS 13B.010(1).
The Board follows KRS Chapter 13B when acting on physician disciplinary matters, just as other Kentucky agencies do when proceeding on administrative matters within their respective areas of responsibility. The issues before us are controlled largely, although not exclusively, by statutory language in KRS Chapter 13B and thus this matter is of considerable significance not only to the Board but to the various cabinets, boards and commissions throughout Kentucky government *449 which conduct administrative proceedings under the Chapter. As evidence of that widespread interest, an amicus curiae brief was filed on behalf of the following eleven program cabinets established within the Executive Branch: Cabinet for Economic Development; Cabinet for Health and Family Services; Education and Workforce Development Cabinet; Finance and Administration Cabinet; Labor Cabinet; Tourism, Arts and Heritage Cabinet; Public Protection Cabinet; Energy and Environment Cabinet; Justice and Public Safety Cabinet; Personnel Cabinet; and Transportation Cabinet. The Executive Branch Ethics Commission has also filed an amicus curiae brief. We note these facts simply to acknowledge the significance of the issues raised for virtually all administrative proceedings conducted in the Commonwealth.
With respect to the practice of medicine and osteopathy in Kentucky, the General Assembly adopted KRS 311.560 to .620 with the "declared policy" of regulating and controlling the practice "to prevent empiricism and to protect the health and safety of the public." KRS 311.555. The General Assembly
created the board, as defined in KRS 311.530, to function as an independent board, the majority of whose members are licensed physicians, with the intent that such a peer group is best qualified to regulate, control and otherwise discipline the licensees who practice medicine and osteopathy within the Commonwealth of Kentucky. In furtherance of this intent, the judiciary of the Commonwealth of Kentucky, who may be caused to review the actions of the board, shall not interfere or enjoin the board's actions until all administrative remedies are exhausted, and modify, remand, or otherwise disturb those actions only in the event that the action of the board:
(1) Constitutes a clear abuse of its discretion;
(2) Is clearly beyond its legislative delegated authority; or
(3) Violated the procedure for disciplinary action as described in KRS 311.591.
KRS 311.555.
KRS 311.591 provides for the Board being divided into two panels with one panel to conduct investigations upon receipt of a grievance against a physician and the other panel to act as the hearing panel. KRS 311.591(5) provides that "the hearing panel or the hearing officer on behalf of the panel shall preside over all proceedings pursuant to the issuance of a complaint." Thus, KRS 311.565(1)(g) empowers the Board to appoint hearing officers and details their role as follows:
Every hearing officer shall be vested with the full and complete power and authority of the board to schedule and conduct hearings on behalf of and in the name of the board on all matters referred for hearing by the board or secretary thereof, including, among other things, proceedings for placing licensees on probation and for limitation, suspension, and revocation of licenses. All administrative hearings conducted by the board, a member of the board, or a hearing officer appointed by the board, shall be conducted in accordance with KRS Chapter 13B. No hearing officer shall be empowered to place any licensee on probation or to issue, refuse, suspend, limit, or revoke any license[.]
KRS 311.565(1)(g). The hearing officer proceeds under the general administrative hearing provisions of KRS Chapter 13B by conducting any necessary prehearing proceedings, presiding over the hearing and issuing a recommended order pursuant to KRS 13B.110. Pursuant to KRS 13B.120, the final order in the administrative matter *450 is issued by the agency head (here the Board's hearing panel) within ninety days of receipt of the hearing officer's recommended order.
KRS 311.591(7) provides that upon conclusion of an administrative hearing the Board's hearing panel can either: (a) dismiss the complaint upon a finding of no violations; (b) find a violation or violations but not impose discipline if it is not deemed necessary; or (c) find a violation or violations and impose discipline. Authorized discipline includes revoking, suspending, restricting, denying or limiting a license as well as reprimanding a licensee or placing him or her on probation on terms "to protect the licensee, his patients or the general public." Id. The hearing panel also may impose a fine for violations of KRS Chapter 311 and in the case of a licensee's sexual contact with a patient revoke or suspend the physician's license "with mandatory treatment of the physician as prescribed by the board." Id. The hearing panel's order "shall be considered the final order of the board regarding the matter." Id.
In reaching its decision, the Board is required to follow KRS 13B. 120(1): "In making the final order, the agency head shall consider the record including the recommended order and any exceptions duly filed to a recommended order." As with other agencies, the Board may accept the recommended order and adopt it in its entirety, may reject or modify the order in whole or in part or may remand the matter to the hearing officer, in whole or in part, for further proceedings. KRS 13B. 120(2). If the final order differs from the hearing officer's recommended order, the agency must include separate statements of findings of fact and conclusions of law. KRS 13B. 120(3).
The Strauss case followed this administrative process and it culminated in the Board's final order placing Strauss on probation for five years with the aforementioned conditions. Strauss's allegations of deviation from the required administrative procedures relate to both the hearing officer stage and the final hearing panel stage. Although the latter issue carries considerably more weight in terms of the consequences for both Strauss and other Kentucky administrative proceedings, we take the issues in the order in which they arose, beginning with the alleged failure by the hearing officer to comply with his statutory obligation to recommend a penalty.
II. KRS 13B. 110(1) Does Not Mandate that the Hearing Officer Recommend a Penalty.
The contents of an administrative hearing officer's recommended order are dictated by KRS 13B.110(1), which provides:
Except when a shorter time period is provided by law, the hearing officer shall complete and submit to the agency head, no later than sixty (60) days after receiving a copy of the official record of the proceeding, a written recommended order which shall include his findings of fact, conclusion of law, and recommended disposition of the hearing, including recommended penalties, if any. The recommended order shall also include a statement advising parties fully of their exception and appeal rights.
Here the hearing officer made 41 pages of factual findings in 232 separately numbered paragraphs followed by four pages of legal conclusions in 19 separate paragraphs, wherein he applied the relevant medical practice statutes to the facts. The summary paragraph provided: "Based upon the foregoing findings of fact and conclusions of law, the hearing officer recommends that the Kentucky Board of Medical Licensure find Jon Strauss, M.D., *451 guilty of the statutory violations set forth above from the Fourth Amended Complaint and take any appropriate action against his license."
The circuit court found that "the hearing officer did recommend a penalty, though one without much specificity, in suggesting 'any appropriate action' against Strauss's license." We are inclined to agree that, although minimal, this language does in fact recommend a penalty, albeit of unspecified nature. As noted, KRS 311.591 gives the Board, acting through the hearing panel, three options when acting on a complaint, two of which apply if violations are found. The first of those two options, KRS 311.591(7)(b), is to find a violation but "not impose discipline because the panel does not believe discipline to be necessary under the circumstances[.]" The hearing officer in Strauss's case clearly recommended that discipline be imposed "against his license," KRS 311.591(7)(c), leaving to the hearing panel what was appropriate in the circumstances. So, at some level, the hearing officer did recommend a penalty (some action should be taken against Strauss's medical license) but he did not do what Strauss insists he is required to do-recommend a specific penalty.
The Court of Appeals did not consider this preliminary point that some penalty had been recommended but proceeded directly to the parties' respective arguments regarding the language of KRS 13B. 110(1). The Board insisted that the statutory directive to make a "recommended disposition of the hearing, including penalties, if any" meant that penalties could be proposed but they were not required. It was within the hearing officer's discretion to recommend or not. Strauss argued the "if any" language only comes into play if the hearing officer finds no violation, in which case there would be no penalties to recommend. In essence, Strauss then asked the appellate court to reason backwards from this construction and conclude that if violations were found, then a penalty had to be recommended-it was the hearing officer's duty.
The Court of Appeals deemed this second construction equally "reasonable" and finding the statute ambiguous proceeded to consider a "transcript of the 1996 Committee Action where this statute was discussed."[3] Attached to Strauss's brief was a transcript of a March 19, 1996 proceeding-"Committee Action" by an unspecified committee. Apparently, the Legislative Research Commission maintained the recording and Strauss's counsel had it transcribed at some unknown time in 2012. A court reporter certificate is attached but the transcript is neither signed nor notarized. Many of the speakers are unidentified and Strauss's sole purpose appears to be to suggest that the Board's counsel at the time was ignored when he proposed that only the Board address the penalty in physician disciplinary matters. Strauss asked the Court of Appeals to take judicial notice of the transcript and it did so, reading it to require that a hearing officer recommend a penalty. This foray into the *452 unofficial transcript of a legislative hearing applicable to a bill that resulted in KRS Chapter 13B and determining statutory intent from something that Board's counsel said immediately before the unidentified committee voted (when KRS Chapter 13B applies to every single agency in the Commonwealth, not just the Board) was unwarranted and entirely inappropriate. The Court of Appeals erred in its statutory interpretation, beginning with its rejection of a plain reading of the statute.
As noted, KRS 13B.110(1) requires a hearing officer to include in his or her recommended order "findings of fact, conclusion of law, and recommended disposition of the hearing, including recommended penalties, if any." The "text of the statute is supreme," Garrard Cty., 520 S.W.3d at 750, and words in the statute are to be given their "literal meaning," Bailey v. Reeves, 662 S.W.2d 832, 834 (Ky. 1984). Where the statute is "clear and unambiguous on its face, we are not free to construe it otherwise." MPM Fin., 289 S.W.3d at 197. As written, the statute plainly and literally requires factual findings, legal conclusions and a proposed disposition of the matter which can include-but is not required to include-recommended penalties. As frequently observed, "all ... parts" of a statute must have meaning, Shawnee Telecom, 354 S.W.3d at 551, and "if any" has meaning when read in the most logical, straightforward manner, i.e., as modifying the phrase "including recommended penalties." If, as Strauss argues, the hearing officer is mandated to include recommended penalties the words "if any" are unnecessary and superfluous. Commonwealth v. Phon, 17 S.W.3d 106, 108 (Ky. 2000) (construction of statute that renders portions thereof meaningless must be avoided). To state the obvious, the legislature could have ended the statute with "including recommended penalties" and the mandate for the hearing officer to include a penalty recommendation would be clear. The General Assembly, however, added two words-"if any"-signifying that while the other enumerated contents of the hearing officer's recommended order were mandatory, the penalty recommendation was not.
Strauss offers a different view of the phrase "if any" to conjure an ambiguity in the statute. His winning argument before the Court of Appeals was: "Clearly, the 'if any' language in KRS 13B.110(1) is there to account for the possibility that a licensee could be successful [in]the defense of his license such that the 'disposition' did not warrant 'any penalty." ' To again state the obvious, a hearing officer does not need to be reminded (or cautioned in a statute) that he or she need not recommend, indeed cannot recommend as a matter of law, a penalty if the licensee is successful and the agency has not established violations by a preponderance of the evidence. As noted, if the legislature wanted to make penalty recommendations mandatory, it would simply have omitted "if any." The statutory language would have then required recommended penalties, and common sense and the law would have supplied the premise that no penalties are appropriate when no violations are found, the premise on which Strauss launches his ambiguity argument. In essence, Strauss posits a non-obvious, strained construction of the plain words and then reasons backwards that since "if any" applies only where the order is in favor of the licensee, then if the order favors the agency, in this case the Board, penalties must be recommended. We are constrained to avoid a construction that renders a statute absurd, Shawnee Telecom, 354 S.W.3d at 551, and the construction advanced by Strauss to create an ambiguity where none exists certainly borders on the absurd.
*453 While we reject the attempt to create an ambiguity in KRS 13B. 110(1) that does not exist, if the statute were ambiguous on its face, resort to the statute's legislative history would be appropriate. "Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history...." Shawnee Telecom, 354 S.W.3d at 551 (citing MPM Fin., 289 S.W.3d at 198 ). Assuming arguendo an ambiguity existed, the document relied on by the Court of Appeals is certainly not sufficient as evidence of legislative history and was inappropriate for judicial notice pursuant to Kentucky Rule of Evidence (KRE) 201.[4]
Strauss first introduced the "Committee Action" as an exhibit in his appellate brief and he refers to it as a meeting of the Legislative Research Committee. On its face, the document indicates it comes from the Legislative Research Commission and the body holding the hearing is unclear although its chairman was apparently Ramsey Morris. The participants are identified variously, sometimes by name, sometimes as "unknown" and sometimes by first name only, e.g., "John" and "Jimmy." The transcriptionist who prepared the transcript apparently did so from a recording supplied to her by Strauss's counsel some sixteen years after the hearing occurred, and she neither signed nor notarized the transcript. The contents of the "debate" reflected in the transcript are confusing because there is no evidence of the language in the specific bill under consideration. Strauss is accurate in stating that a prior counsel for the Board informed whatever body he was appearing before that he read the pending bill to place responsibility for recommending a penalty on the hearing officer, whereas the Board was the entity that the legislature had created to decide penalties in physician disciplinary matters. His suggested amendment was not passed but, again, without the language of the bill under consideration, leaving aside the deficiencies in the transcript itself, this action means very little.
KRE 201(a), in pertinent part, allows a court to take judicial notice but the "noticed fact must be one not subject to reasonable dispute in that it is ... (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The unsigned, unofficial transcript proffered by Strauss fails this test miserably and should never have been considered, even if a true ambiguity had existed in the controlling statute.
In sum, a hearing officer's recommended order must recommend a disposition of the administrative matter, but it need not recommend a penalty. The hearing officer in this case did not err in recommending that the Board "take any appropriate action against [Strauss's] license for those violations" reflected in his Recommended Order.
III. The Board is Not Required to Independently Review the Administrative Record in Whole or in Part But is Simply Charged to "Consider the Record Including the Recommended Order and Any Exceptions."
KRS 13B. 120(1) states: "In making the final order, the agency head shall consider the record including the recommended order and any exceptions duly filed to a recommended order." KRS 311.591(7) simply provides that "upon completion *454 of an administrative hearing, the [Board's] hearing panel shall issue a final order." The physician disciplinary statutes, thus, do not amplify the agency "final order" requirements of KRS 13B. 120(1) so the question presented is whether the Board, acting through its hearing panel and pursuant to KRS 13B. 120(1), erred in not independently reviewing the record, in whole or in part, prior to issuing a final order against Strauss's license.
To place this statutory construction question in context, we reiterate that the hearing officer issued a 47-page Recommended Order following an eleven-day hearing wherein he admitted 60 exhibits, including extensive patient records. The record is accurately described as voluminous. The hearing officer went into great detail as to the allegations surrounding Strauss's sexual misconduct with Patients A and U. He found the evidence regarding Patient U "compelling" and although there was less evidence with respect to Patient A, he concluded that both sets of sexual misconduct allegations were proven by a preponderance of the evidence. He also found by a preponderance of the evidence that Strauss had provided Patient U with controlled substances in exchange for sexual contact and, further, that once the Board began investigating him, Strauss altered Patient U's medical record to deceive the Board as to when she became his patient. As for the other charges, the hearing officer stated: "Consequently, the preponderance of the evidence supports the conclusion that Strauss had inadequate documentation in his medical records, but the evidence does not support the conclusion that the care and treatment that Strauss actually provided to his patients that is unrelated to the allegations of sexual misconduct violated the Board's standards." Thus, Strauss prevailed on some of the charges leveled against him in the Fourth Amended Complaint.
Strauss filed 57 pages of detailed exceptions to the Recommended Order along with four exhibits. He divided his written objections into distinct parts: "Hearing Officer Bias" (7 pages); "Opinion of Dennis Wagner, Ed.D., Licensed Psychologist" (2 pages addressed to the exclusion of this witness hired by Strauss); "Patient A and Patient U; An Overview" (3 pages); "The Specifics of Patient A's Stories" (17 pages); "Patient U" (23 pages); a "Conclusion" about Patients A and U (2 pages); "Record Keeping is Not Valuated on a 'Standard of Care' Basis, and Cannot Be Used As a Disciplinary Subject Without Administrative Regulation to Advise Licensees of What Records Are Acceptable" (2 pages) and finally a "Summary" (1 page). Strauss's exceptions made ample reference to the record. For example, on the issue of hearing officer bias, he identified an oral statement made at the hearing as well as specific language in the Recommended Order. Strauss reviewed in detail the allegations of Patients A and U and his arguments for why neither of these women was credible, which included an allegation that Patient A has Munchausen syndrome[5] and lives in a fantasy world and Patient U is a drug abuser with profound dementia. Strauss acknowledged the women's "contrived allegations ... oddly do have much in common" but he insisted the commonality is that both witnesses had motives to lie and did so. On the medical record documentation deficiencies, he cited testimony in the record that medical students are not trained to prepare records, attributed the charge to "problematic electronic records"
*455 and insisted that medical records were not "standard of care" issues. As noted, in addition to these written exceptions, Strauss's counsel was allowed to address Hearing Panel A before they voted.
On judicial review, the circuit court observed that KRS 13B.130, entitled "Official Record of Hearing," identifies ten separate components of the official record.[6] KRS 13B.120 does not require review of the "official record" but rather "consider[ation of] the record" to include the recommended order and exceptions. Recognizing the distinction in "review" and "consider" as well as "record" vis-a-vis "official record," and the realities of administrative proceedings, the circuit court rejected Strauss's argument. The Court of Appeals ruled to the contrary, focusing not on KRS 13B. 120(1) but rather a prior unpublished Court of Appeals' case, Moses , (which it represented concluded that the Board must review the entire record when in fact the case held the opposite); "dicta found in Rapier v. Philpot, 130 S.W.3d 560 (Ky. 2004) ;" and KRS 13B. 120(2) and (3).
Focusing, as we must, first on the language of KRS 13B. 120(1), we note that the Merriam-Webster Online Dictionary (2018 ed.) defines "consider" as "to think about carefully" or "to take into account." The statute's reference to "record" is not modified by use of the word "entire" or a similar adjective nor is the record defined by cross-reference to the KRS 13B.130 description of the "official record," which includes ten different components including "a recording or transcript of the proceedings." KRS 13B. 130(10). A plain reading of the statute simply does not support Strauss's proposition that the Board must review the entire eleven-day hearing and exhibits. Instead, it requires the Board "to think carefully" and "to take into account" the "record" including the recommended order and the exceptions, leaving to the Board the discretion as to what other parts of the record, if any, need to be examined.
Moreover, a construction that required the Board to repeat the tasks assigned to the hearing officer-which include hearing the evidence and making credibility determinations prior to issuing a recommended order-would produce an absurd result. Shawnee Telecom, 354 S.W.3d at 551. ("We ... presume that the General Assembly did not intend an absurd statute.") The Board is primarily comprised of practicing physicians in order to provide licensees with consideration of their charges by a group of their peers, people who are similarly trained and understand the practice of medicine. KRS 311.555. As the Board aptly argues, if Board members had to review days of hearing testimony in every physician disciplinary case, they would not be able to maintain their own practices but would have to devote full-time effort to Board matters. That is an absurd construction that undermines the administrative process for physician disciplinary matters *456 created by KRS Chapter 311 and KRS Chapter 13B.
Recognizing that the Court of Appeals reached a contrary conclusion, we address how it misconstrued the Board's statutory responsibility to consider the record. First, the Court of Appeals misread altogether the holding of Moses v. Kentucky Bd. of Medical Licensure, an unpublished case from that Court addressing this same issue. That panel expressly concluded: "Dr. Moses contends that ... the Board had to consider the entire record of the administrative hearing and compare it to the hearing officer's recommended order. We disagree." < i>Moses, 2016 WL551431, at *5. The case is on point but its holding is not supportive of the Court of Appeals' conclusion in this case. Second, although the Court of Appeals did not misread another case it relied on, Rapier v. Philpot, it readily acknowledged that the statement in that case to the effect that the agency must "review the entire record ... to determine whether there is justification ... for adopting the recommended order," was dicta. 130 S.W.3d at 563. Dicta in an unrelated case cannot trump the language of the statute; the language in the statute is "supreme." Garrard Cty., 520 S.W.3d at 750. Here, the language does not dictate review of the "entire record."
The third prong of the appellate court's analysis was grounded in statutory language, specifically KRS 13B. 120(2) and (3), which state:
(2) The agency head may accept the recommended order of the hearing officer and adopt it as the agency's final order, or it may reject or modify, in whole or in part, the recommended order, or it may remand the matter, in whole or in part, to the hearing officer for further proceedings as appropriate.
(3) The final order in an administrative hearing shall be in writing and stated in the record. If the final order differs from the recommended order, it shall include separate statements of findings of fact and conclusions of law. The final order shall also include the effective date of the order and a statement advising parties fully of available appeal rights.
Noting that the Board is the "ultimate decision maker," the Court of Appeals concluded that the statute's "literal meaning" required review of the "record and evidence" because otherwise the Board "would seemingly never reject or modify the recommended order as contemplated by these statutes." This analysis misses the mark and disregards fundamental principles of administrative practice.
Any party aggrieved by a hearing officer's recommended order is required to file exceptions in order to draw to the Board's attention any perceived inadequacies in the findings of fact and conclusions of law. KRS 13B. 110(4). The written exceptions highlight the points of disagreement and where the hearing officer allegedly erred, just as an appellant's brief identifies the issues raised and seeks judicial correction of those specific errors. By focusing on the recommended order and the exceptions, the Board members can determine what, if any, portion of the hearing transcript or exhibits they may want to review. In short, it is entirely possible for the Board to reject all or part of the recommended order without a full-fledged, independent review of the entire proceedings because the order and the exceptions provide a roadmap that allows the Board members to identify any points of concern that may merit further examination and, where appropriate, review the relevant part of the record. KRS 13B. 120(2) and (3) still have meaning under this construction of the process. Those *457 subsections of the statute simply identify the options available to the agency (here the Board) and delineate the requirements of any final order that differs from the hearing officer's recommended order, i.e., it must contain separate statements of findings of fact and conclusions of law. This requirement provides affected parties with an understanding of why the final order differed from the recommended order and facilitates effective judicial review.
In sum, the Board is charged with considering the record including the recommended order and exceptions. The extent of the record consideration beyond the recommended order and exceptions is a matter committed to the Board's sound discretion. Contrary to Strauss's claim, KRS 13B.120 does not mandate an independent review of the entire record.
CONCLUSION
KRS 13B.110(1) allows a hearing officer to recommend a penalty but it does not require him or her to do so. KRS 13B. 120(1) requires the Board to consider the record, including the recommended order and exceptions, but it does not require the Board to review the proceedings in their entirety before issuing a final order. The Court of Appeals erred in holding otherwise and, accordingly, we reverse and remand to that Court for further review of the issue on which it declined to rule, namely the sufficiency of the evidence to support the Board's final order.
All sitting.
All concur.

As discussed below, the hearing officer found in Strauss's favor on several of the alleged violations.

Moses was proceeding through the disciplinary process at the same time as Strauss's matter and the Court of Appeals in a published opinion, later ordered unpublished by this Court upon denial of discretionary review, addressed the same two issues advanced by Strauss.

Strauss's counsel provided this transcript, for the first time as an exhibit to his Court of Appeals' brief, with the following cover sheet:
Pursuant to CR 76.12(4)(c)(vii), Dr. Strauss requests this Court to take "judicial notice" (as that is defined in KRE 201 ) of an official proceeding of the Legislative Research Committee (the "LRC") in March of 1996.
The LRC provided a tape recording of the proceeding which was transcribed by a Court Reporter. The tape is available for inspection upon request.
This transcript has previously been provided to the KBML and has also been filed of record in several proceedings in the Jefferson Circuit Court, all without objection.

We recognize there are preservation concerns with this issue and that judicial notice at the Court of Appeals' stage regarding "facts" is problematic but we address this issue since it was vital to the Court of Appeals' ruling in this case.

Munchausen syndrome, now referred to as factitious disorder, is "a serious mental disorder in which someone deceives others by appearing sick, by purposely getting sick, or by self-injury." http://www.mayoclinic.org (access July 2, 2018).

Those categories are
(1) All notices, pleadings, motions, and intermediate rulings;
(2) Any prehearing orders;
(3) Evidence received and considered;
(4) A statement of matters officially noticed;
(5) Proffers of proof and objections and rulings thereon;
(6) Proposed findings, requested orders, and exemptions;
(7) A copy of the recommended order, exceptions filed to the recommended order, and a copy of the final order;
(8) All requests by the hearing officer for an extension of time, and the response of the agency head;
(9) Ex parte communications placed upon the record by the hearing officer; and
(10) A recording or transcript of the proceedings.